FILED
2017 Mar-21  PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT BONNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number: |
| | ) | 1:16-cv-01084-JEO |
| JIMMY KILGORE, SHERIFF, in his | ) | |
| official and individual capacity; the | ) | |
| TALLADEGA COUNTY CIVIL | ) | |
| SERVICE BOARD; and the | ) | |
| TALLADEGA COUNTY COMMISSION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this action, Plaintiff Scott Bonner brings claims pursuant to 42 U.S.C. § 1983 alleging violations of his federal due process rights in connection with the termination of his employment as a deputy with the Sheriff's Department of Talladega County, Alabama.  (Doc.[1] 1 ("Complaint" or "Compl.")).  Bonner brings those claims against: (1) Talladega County Sheriff Jimmy Kilgore in both his official and individual capacity; (2) the Talladega County Civil Service Board; and

---

[1] Citations herein to "Doc(s). __" are to document numbers assigned to the pleadings, motions, and other materials in the court file, as compiled and designated by on the docket sheet by the Clerk of the Court. Pinpoint citations to the Complaint are to the relevant paragraph number(s). Pinpoint citations to other materials are to the page of the electronically filed document in the court's CM/ECF system, which may not correspond to the pagination on the original "hard copy" presented for filing.

(3) the Talladega County Commission (hereinafter collectively "Defendants").

The cause comes to be heard on Defendants' motion to dismiss for a failure to state a claim under FED. R. CIV. P. 12(b)(6), or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. (Doc. 4). Included within that motion is a demand for an award of attorney's fees pursuant to 42 U.S.C. § 1988. (Doc. 4 at 2). Upon consideration, the court[2] concludes that Defendants' alternative motion for summary judgment is due to be granted but that their request for attorneys' fees is due to be denied.

I.     BACKGROUND

A.     Plaintiff is Terminated and Seeks Administrative and
       Judicial Review under Alabama State Law

Plaintiff alleges that he began working as a deputy in the Talladega County Sheriff's Department (the "Department") in 2002. (Compl. ¶ 12). He also pleads, however, that, in that post, he had been "hired by," and was "employed with," the Talladega County Commission ("County Commission"). (Id.) In any case, on June 9, 2014, Plaintiff was placed on administrative leave with pay, and ten days later he received a notice from Sheriff Kilgore advising that he intended to terminate Plaintiff's employment. (Id. ¶ 13). Such disciplinary action appears to have been related to a charge that Plaintiff misrepresented facts in verbal and

_____

[2] The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10).

written complaints to a Department supervisor, Chief Deputy Ken Flowers. In particular, it seems to have been alleged that Plaintiff had falsely claimed that another member of the Department, a Captain Howard Bussie, had "cursed him out" during an argument. (*See* Doc. 5-3 at 3-5). On July 1, 2014, after a hearing before Sheriff Kilgore, Plaintiff was advised he was discharged. (Compl. ¶¶ 12, 13).

Plaintiff pursued an administrative appeal of Sheriff Kilgore's termination decision to the Talladega County Civil Service Board (hereinafter the "Board"), pursuant to Alabama Act No. 88-438. (S*ee id.*; Doc. 15 at 105). The Board held an evidentiary hearing of its own, which included the following attendees: Plaintiff; his attorney; Sheriff Kilgore; an attorney representing him and the Department; the three members of the Board; the Board's attorney; and Toni Kilgore, who happens to be both the Board's Secretary and Sheriff Kilgore's wife (hereinafter "Mrs. Kilgore"). (*Id.*) On September 9, 2014, the Board issued a brief order affirming Sheriff Kilgore's decision to terminate Plaintiff. (Compl. ¶ 17; Doc. 15 at 105-06). In so doing, the Board found that Plaintiff "did personally misrepresent statements to a supervisor, namely Chief Deputy Ken Flowers," which the Board deemed a "deliberate falsification of records and/or personal misrepresentation of statements given to a supervisor, an official, the public, or the Board." (Doc. 15 at 105-06). The Board further noted that, under its published

3

rules, such was a "Group Two" offense (*see id.*; *see also id.* at 59-60, §
I(3)(b)(1)(e)), for which even an initial violation "will normally constitute grounds
for dismissal." (*Id.* at 105-06; *see also id.* at 61, § I(3)(b)(2)). As a consequence,
the Board determined that Sheriff's Kilgore's decision to fire Plaintiff was justified
and due to be upheld. (Doc. 15 at 105-06).

Plaintiff then sought judicial review in the Circuit Court of Talladega
County, Alabama (hereafter the "Circuit Court"), also pursuant to Ala. Acts 88-
438. (Compl. ¶ 17; Doc. 5-1). In his pleading, Plaintiff named Sheriff Kilgore, the
Board, and the County Commission as the "Appellees." (Doc. 5-1). In support of
his claim for relief, Plaintiff asserted that the decision to terminate his employment
"lack[ed] a basis in law or fact"; was "in violation of Appellees' own policies,"
was "in violation of the Civil Service Act of the State of Alabama," and was "in
violation of [Plaintiff's] right to due process and/or equal protection of the law."
(Doc. 5-1, ¶ 4).

After the Board supplied the record to be considered on appeal, Plaintiff
moved the Circuit Court to amend or correct it. (Doc. 15 at 69-87). In particular,
Plaintiff asserted that the record was incomplete because it omitted certain
discussions between Mrs. Kilgore and the members of the Board, at least some of
which were *ex parte*, occurring on the day of the Board's hearing. (*Id*. at 69-71).
On that score, Plaintiff explained that he had made his own digital recording of the

Board's hearing, after giving notice to the Board that Plaintiff intended to do so

and the Board did not object.  (*Id.* at 69, ¶ 1).  In reviewing that recording, Plaintiff

discovered that, after he and his counsel had left the hearing room during a recess,

their recording device had continued to run.  And during that recess, Mrs. Kilgore

could be heard discussing the case with the members of the Board in an ex parte

conversation as follows:

> [Board Member George] Sims:  Who are y'all thinking about
> calling?

> [Board Member Tommy] Spears:  I kinda would like to hear from
> [Plaintiff Scott] Bonner and I would kinda like to hear
> from [Sheriff] Jimmy [Kilgore].

> [Board Chairman Mike] Walker:  Well you know to me I don't
> know why we haven't heard from him before.  There was
> no statement.  Ya know why didn't Scott give a statement.  I
> understand he's got a lawyer, but if you're telling the truth,
> what difference does it make.

> Sims: I don't know he may have something he don't want us to
> know.  Ya know what I was thinking look at it if you make a
> decision on that other stuff I mean them cussing one another I
> don't see that being a big deal if he did or not I don't know he
> probably did you know uh but uh I think it just boils down to
> the thing with [Captain] Howard [Bussie's] wife I think I saw
> something in some of this stuff.

> Spears:   Now to me that immaterial.

> Sims:   Oh it is?

> Spears: Because Bonner or she said that Bonner or maybe Bussie
> said Bonner tried to call him later and he didn't answer
> the phone so I can see where Bonner might have gone up

5

there to talk to Bussie face to face and thought he would catch him at lunch where he knew he would always be.

Walker: Well I don't know if there are rules against it or not but that's not why were are here.

Spears:  That's why I think Peggy is insufficience (sic).

Walker: Well let's get back to ...

Spears:  Well I got like a half page of stuff right here I would like to ask

**[Mrs.] Kilgore:  Well he's an employee so y'all got every right to question 'em.**

Walker: We might even call you.

**[Mrs.] Kilgore: I wouldn't care.**

[Board Attorney Will] Hollingsworth:   I thought the big beef was lying about the Draper stuff.  You know he meets with [Chief Deputy] Flowers and I think the sheriff even denies that ever happened then you got Haynes tell him what he heard him say ya know why...

Walker:  Brantley Shaw is not telling the truth.

Spears:  Ya know about that phone call is something I wanted to ask directly to Bonner.  Let him answer it um about the Draper business rather than hearing two other people's story.  Ones saying he didn't the other saying he overheard it mentioned and other party say no ain't no way.

Walker: Should we break for lunch. Spears: If she can postpone her.

Walker: She has a thing at 3:00.

6

Spears: Take in consideration postpone if we had to.

Walker: It's not like you have anything to do.

**[Mrs.] Kilgore:  I do I do have a job.**

Walker:  You have a job.

**[Mrs. Kilgore]:  Yes.**

Sims:  I got dogs on the couch at home watching TV.

**[Mrs.] Kilgore:  Tommy [Spears] works I know.**

Walker: You know this will be a lengthy if you know [Sheriff]
Jimmy [Kilgore's] testimony probably won't be long but
Bonner's probably won't be long because he probably
won't say anything you know I guess he can evoke (sic)
his Fifth Amendment right.

Hollingsworth: Well it's not a criminal thing.

Spears: Well I know that.

Walker: Well I don't know.   My best defense would be myself.

Sims: Yea[h,] me to[o,] I agree.

Walker: I would be chopping at the bit to defend myself.

**[Mrs.] Kilgore: Did she agree you could talk to him a while ago?
Did she agree she would stay and you could call him?**

Spears: Well she hasn't agreed to stay we agreed on well I guess
the next thing we need to do is ask her if she can stay
longer and if not then we need to adjourn or recess and
come back at a later time.

Walker: Sounds good to me.  What about you George?

Sims:    I can come back anytime I mean I had rather come back
            here.

Spears:    I can sec maybe needing 30 minutes more. You think
            longer?

Walker:    I think longer.

(Doc. 15 at 79-81 (emphasis added)).  At that point, the attorneys returned to the

hearing, whereupon Barry Vaughn, the attorney for Sheriff Kilgore and his

Department, advised the members of the Board that they could not hold it against

Plaintiff Bonner if he chose not to testify.  (*Id*. at 81).  After that, the recording

captured the following:

Walker:        My question would be about his abusive criticize of a
                superior.  Includes the sheriff or Kennedy or Howard
                [Bussie] or whoever.  You know there seems like there's
                a big problem with his supervisors.  And I realize that.
                You're suppose[d] to you know I'm having a hard time
                with that you know criticize who I'm working for.  If you
                don't want to work for 'em them so I would like to ask
                him about that.  I mean what is his problem with the
                Sheriff's Department?  Where he has been employed 8
                some odd years.  And um you know you um were not
                showing a pattern of being reprimanded as such like he
                should be you know written up for this um then you
                terminate someone.  Uuhhno (sic).  This right here is well
                you know there is politics in it. You can't get around
                politics.  Politics in law enforcement.  But you know but
                if you're that unhappy then you know you're causing
                a problem and uhh my experience with the Sheriff's
                Department is they work very well.  Look at the length of
                employment on all these guys I mean they work smooth.
                They never have any problems. This is a rare occurrence.
                So I want to talk to Lt. Bonner and ask him questions.
                That is my opinion and the way I feel.

8

Sims:          I agree.

(Doc. 15 at 81-82).  The attorneys then left the room, at which point the group

discussed whether to eat lunch and whether to continue the hearing until some later

time:

Walker: If she can stay George we can all stay.  What I'm saying we
can go eat and all come back and get this done before 5:00.

**[Mrs.] Kilgore: And you're buying lunch.**

Spears: That's fine with me if she can stay but you know.

**[Mrs.] Kilgore: She can stay. She's been knowing for a month
that she's coming today.**

Spears:  She said three I thought she said two earlier.

Walker: Will [Hollingsworth's] got something at 2:00.

Spears:  Let's break an hour for lunch and you will be through by
then?

Hollingsworth:   Oh yea.

**[Mrs.] Kilgore:  So we are going to come back in at 3:00.**

Spears: So if [Plaintiff Bonner's attorney] Ms.[Gina] Coggin can
stay that good with you[?]

All:  Oh yea[h].

Sims:  What if she can't though[?]

Hollingsworth:  Then we will have to come back.

**[Mrs.] Kilgore:  She said not to worry about it. Not to have that as
a[n] issue.**

9

Walker:  We will get Judge Sims to draw up a thing to tell
        [inaudible]

**[Mrs.] Kilgore:  Y'all good want me to cut it and tell them to come
        back a 3:00[?]**

All:  Yes.

Sims: I can come back quicker than that.

Hollingsworth:  Don't tell me you're not going to eat.

Sims: I was just gonna walk over to Tina's.

Spears: She still open?

Hollingsworth: Want me to call-to see if she is still serving?

Spears: Let's go to lunch.  Who need[s] to go get her.

Sims:  I think I will just jump out.

Hollingsworth:  Want me to go ask her what her plan is.

Sims:  Y'all going to call him and Jimmy both?

Walker:  I don't need to talk to Jimmy.

Hollingsworth:  It will probably just be his letter that's in the records.

Spears:  Let me look at that.  I'm sure I did.

Hollingsworth:  That probably needs to be in there for sure.

**[Mrs.] Kilgore:  You have it in your packet Tommy.**

Spears:  You know which folder it's in?

Hollingsworth:  Bonner has that Facebook message.

10

Sims:  I don't know nothing about seeing that.

**[Mrs.] Kilgore:  [Inaudible].**

Sims:  I might have. I read every bit of if.

**[Mrs.] Kilgore.  Yea[h] it's going to be in the very first one. Under disciplinary action.**

Hollingsworth:  It's eri (sic).

Walker:  They are trying to make this like a trial.

**[Mrs.] Kilgore:   Alright I'm (sic) go tell them.**

(Doc. 15 at 82-84) (emphasis added).

Plaintiff argued to the Circuit Court that Mrs. Kilgore's statements during the recess as shown on the recording demonstrated that "she was improperly acting as an agent of the Sheriff rather than an impartial secretary of the Board" and "were clearly intended to influence the Board's decision and to negatively impact the Plaintiff." (*Id*. at 70, ¶ 5). Plaintiff asked the Circuit Court, therefore, to consider, in addition to the record supplied by the Board, Plaintiff's recording of the recess discussions and an unofficial transcript thereof. (*Id*. at 70, 79-84).

On August 21, 2015, the Circuit Court entered an order indicating its agreement that the administrative record submitted by the Board was "inaccurate and incomplete" in certain respects and that such deficiencies had to be corrected before the court could resolve Plaintiff's appeal. (Doc. 5-2 at 11, ¶ 16). However,

the Circuit Court also concluded that determinations regarding the content of the record on appeal had to be addressed by the Board rather than by the court.  (*Id*. at 14, ¶ 21).  Therefore, the court deferred a ruling on the merits and remanded the matter to the Board, directing it to "supplement," "correct," and "certify" the record on appeal"; to "rule on any motions filed with it to amend and/or correct [the] transcript of record"; and to "issue appropriate factual findings supporting its ruling" affirming the Sheriff's decision to terminate Plaintiff.  (*Id*. at 15, ¶ 6).

On return from the remand to the Board, the Circuit Court entered a final order in Plaintiff's appeal on December 29, 2015.  (Doc. 5-3).  The Circuit Court first outlined various additional materials that had been filed by the Board as included in the record on appeal.  (*Id.* at 1-5).  In that vein, however, the Circuit Court also recognized that, on remand, the Board had denied a motion by Plaintiff asking the Board to amend or correct the record on appeal and that the Board had likewise denied as moot a motion by Plaintiff asking Mrs. Kilgore to recuse as the Board's Secretary in connection with his case.  (*Id.* at 2, ¶ 1(c)).  In addition, the Circuit Court's order quoted in its entirety the Board's amended final administrative order dated September 23, 2015, by which it again affirmed Sheriff Kilgore's decision to terminate Plaintiff's employment.  (*Id.* at 3-5, ¶ 2).  The Board reiterated therein that it found Plaintiff to have committed a "Group Two Offense" by making misrepresentations to Chief Deputy Flowers, thereby

12

authorizing Sheriff Kilgore to discharge Plaintiff under the Board's rules and regulations.  (*Id.* at 3, ¶ 2).  But unlike in its order of September 9, 2014, the Board's amended final order set out the nature of subject misrepresentations and the evidence the Board considered in reaching its determination.  (Doc. 5-3 at 3-5, ¶ 2).  Namely, the Board found that Plaintiff had "undermine[d] and demean[ed] the chain of command" by lying to Flowers about Bussie having used profanity in his argument with Plaintiff.  (*Id.*)  The Board acknowledged that Bussie had admitted to calling Plaintiff a "baby" and a "spoiled brat."  (*Id.*)  Nonetheless, the Board concluded that Plaintiff had made verbal and written misrepresentations by telling Flowers that Bussie had "cussed" Plaintiff, including by stating, "You ain't worth a shirt," "Your ass will be gone," and "I want your ass gone," and by calling Plaintiff a "big ass titty baby," "a spoiled ass brat cry baby," and "a baby ass."  (*Id.* at 4, ¶2).

After outlining the materials submitted by the Board on appeal, the Circuit Court dismissed both the Board and the County Commission on the basis that they were not necessary or proper parties to the judicial review action.  (Doc. 5-3 at 8). That left Sheriff Kilgore as the sole remaining appellee.  In resolving the merits of the appeal, the Circuit Court observed at the outset that, under Alabama law, its review of the Board's decision was limited.  (*Id.* at 6-7, ¶ 5).  The Circuit Court recognized that it could not substitute its judgment for that of the Board and that,

13

so long as the Board properly applied the law and its findings were supported by substantial evidence, its decision was bound to be affirmed.  (*Id.*, citing *City of Dothan Personnel Bd. v. Herring*, 612 So. 2d 1231 (Ala. Civ. App. 1992)). Employing those standards, the Circuit Court concluded that the Board had correctly applied the law and the "record on appeal before [the] Court provided sufficient and substantial evidence to ascertain that the decision of the [Board] was not arbitrary, was not capricious, and was supported by reasonable, substantial and probative evidence on the record considered as a whole." (Doc. 5-3 at 7, ¶ 5). Thus, the Circuit Court concluded that the Board was authorized the make the findings it did based on its authority to weigh the witness testimony and documents evidence before it, including by resolving credibility and any other conflicts in the evidence.  (*Id.*)  Accordingly, the Circuit Court affirmed the Board, denying all of Plaintiff's contentions as being without merit (*id.* at 7-8, ¶¶ 5-9), including specifically his claims alleging violations of constitutional guarantees to due process of law and equal protection of the laws.  (*Id*. at 8, ¶ 7).  Subsequently, the Circuit Court's judgment became final when Plaintiff did not seek further review in the Alabama Court of Civil Appeals or the Alabama Supreme Court.

## B.   Procedural History of the Instant § 1983 Action

On July 1, 2016, after the Circuit Court's judgment had become final, Plaintiff filed the instant action in this court.  (Compl. at 1).  Here, Plaintiff seeks

relief under 42 U.S.C. § 1983 against Sheriff Kilgore, the Board, and the County Commission, claiming that his discharge violated both "substantive" and "procedural" rights guaranteed by the Due Process Clause of the Fourteenth Amendment.  (*Id.* ¶¶ 24, 25).  That is so, Plaintiff says, because he has a property right in his continued employment such that he could be discharged only for cause, which he claims was lacking.  (*Id.* ¶¶ 13, 14, 15).  Plaintiff further pleads that he was afforded "constitutionally-inadequate process."  (*Id.* ¶ 26).  More specifically, Plaintiff alleges that Mrs. Kilgore, in her capacity as Secretary of the Board, made improper statements to the members of the Board during the recess that were intended influence them to uphold her husband's decision to fire Plaintiff.  (*Id.* ¶ 16).  Plaintiff also contends that, in violation of the Talladega Civil Service Board Act, the Board refused to certify the complete hearing record to include Mrs. Kilgore's recess statements and "was also afforded the opportunity to provide written findings contrary to [that] Act."  (*Id*. ¶ 18).  Finally, Plaintiff alleges that the three Defendants "acted with malice and/or reckless indifference" to his rights and "in concert with one another to violate his right to a hearing before an impartial tribunal."  (*Id.* ¶ 27).  On his claims, Plaintiff demands declaratory and injunctive relief; reinstatement; back pay; and compensatory damages, including for mental anguish.  (*Id.* at p. 8-9).

15

Defendants now move to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for entry of summary judgment under Fed. R. Civ. P. 56. (Doc. 4). In support, Defendants raise the following arguments:

(1) Plaintiff's claims against Sheriff Kilgore in his official capacity are barred by the Eleventh Amendment and because, in that capacity, he is not a "person" for purposes of § 1983;

(2) Plaintiff's claims are barred by the doctrines of res judicata "and/or" collateral estoppel, based on the Circuit Court's judgment;

(3) Plaintiff fails to allege facts supporting that the County Commission took any action in connection with his discharge;

(4) Plaintiff's substantive and procedural due process claims fail on the merits; and

(5) Sheriff Kilgore is entitled to qualified immunity as it relates to claims against him in his individual capacity.

(*See* Docs. 5, 16). Defendants also claim that they are entitled to an award of attorney's fees from Plaintiffs pursuant to 42 U.S.C. § 1988. (Doc. 4 at 2; Doc. 5 at 13-14; Doc. 16 at 7). Plaintiff has filed a brief in opposition to Defendants' dispositive motion and their request for attorney's fees. (Docs. 14, 15). Both sides have also filed evidence in support of their respective positions. (Docs. 5-1, 5-2, 5-3; Doc. 15 at 16-106).

## II.    REVIEW STANDARDS

### A.    Motion to Dismiss under Rule 12(b)(6)

Rule 12(b)(6), Fed. R. Civ. P., authorizes a motion to dismiss a complaint on the ground that its allegations fail to state a claim upon which relief can be granted. On such a motion, the "'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)).  The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences.  *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).

In analyzing a Rule 12(b)(6) motion, the court is generally limited to examining the four corners of the complaint itself, although the court may also look to documents referenced in the complaint or attached thereto, provided they are central to the plaintiff's claims and their authenticity is unchallenged.  *See SFM Holdings, Ltd. v. Banc of Amer. Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  If a district court considers materials beyond that scope, however, it is required to treat the motion to dismiss as one for summary judgment under Rule 56, *see* Rule 12(d), Fed. R. Civ. P.; *SFM Holdings*,

600 F.3d at 1337; *Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010).

### B.   Summary Judgment

Pursuant to Rule 56, Fed. R. Civ. P., a party is authorized to move for summary judgment on a claim asserted against it.  Under that rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(a).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

18

56(c)(1)(A), (B).  In its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).  At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.    DISCUSSION

### A.    Claims against Sheriff Kilgore in his Official Capacity

Sheriff Kilgore makes a threshold argument that claims raised against him in his official capacity must be dismissed because, in that capacity, he is an official of the State of Alabama, such that he both enjoys immunity under the Eleventh Amendment and is not a "person" for purposes of § 1983[3].  Sheriff Kilgore is correct that, in his official capacity, he enjoys Eleventh Amendment immunity from suit and he is not a "person" under § 1983.  *See Dean v. Barber*, 951 F.2d 1210, 1215 n. 5 (11th Cir. 1992); *Carr v. City of Florence, Ala.*, 916 F.2d 1521,

---

[3] 42 U.S.C. § 1983 provides in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

(emphasis added).

1524-25 & n. 3 (11th Cir. 1990).  However, those arguments cannot carry the day to the limited extent Plaintiff demands reinstatement or other prospective injunctive relief.  *See Welch v. Laney*, 57 F.3d 1008-09 (11th Cir. 1995); *Lane v. Central Ala. Cmty. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014).  Accordingly, except insofar as they seek reinstatement or other prospective injunctive relief, Plaintiff's official capacity claims against Sheriff Kilgore shall be dismissed on these grounds.

### B.      The Claims against the County Commission

The County Commission argues that all claims against it are due to be dismissed because, it says, the factual allegations of the Complaint do not allow a plausible inference that the County Commission caused or is otherwise responsible for any alleged violation of Plaintiff's due process rights.  In support, the County Commission maintains that, as a matter of Alabama law, Plaintiff is a state employee of the Sheriff's Department, not the County Commission.  It further argues that Plaintiff has not alleged any facts reasonably supporting that the County Commission was involved in the decision or process by which Plaintiff's employment was terminated.  The court agrees.

Plaintiff has summarily pled that, in his capacity as a deputy sheriff, he was "hired by" and "employed with" the County Commission.  (Compl. ¶ 12).  It is well established, however, that, under Alabama law, deputy sheriffs are executive

officers of the State of Alabama rather than county employees.  *See Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525-26 (11th Cir. 1990); *Terry v. Cook*, 866 F.2d 373, 379 (11th Cir. 1989); *Heard v. Hannah*, 51 F. Supp. 3d 1129, 1139 (N.D. Ala. 2014); *see also McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 786-93 (1997) (sheriff was final policymaker for the State of Alabama, not for the county). Indeed, Plaintiff now concedes that to be so.  (Doc. 15 at 7).

Falling back, Plaintiff highlights that the County Commission is obligated under state law to provide the Board with telephone service, office supplies, stationery, clerical assistance, and office space, and to reimburse the Board for legal, consulting, and other, reasonably necessary expenses it incurs up to $5,000 per year.  *See* Ala. Acts 88-438, § 6; (*see also* Doc. 15 at 26).  Plaintiff insists that the County Commission's duty to provide such financial assistance to the Board creates a "relationship between" them whereby the County Commission might be held liable for the Board's actions.  (Doc. 15 at 7-8).  The court disagrees.

The fact is that Plaintiff's has not made any effort, through either his pleading or evidence, to explain how the County Commission or its members purportedly played any role in the decision or proceedings by which Plaintiff was terminated.  To the extent that Plaintiff now relies on the County Commission's obligation to provide basic funding and reimbursement of the Board's operational

expenses, such is not itself a sufficient basis for imposing § 1983 liability against the County Commission for constitutional violations that might arise from the Board's activities.  *See McMillian*, 520 U.S. at 791-92 (that county funds were used to pay Alabama county sheriff's salary and to provide equipment and supplies for sheriff's department did not render sheriff a final policymaker for county such that county might be liable under § 1983 for sheriff's actions in conducting law enforcement activities); *Turquitt*, 137 F.3d at 1289-90 (Alabama county was not liable under § 1983 for harms befalling inmates due to allegedly improper operation of the jail under control of sheriff, despite the fact that county was required under state law to provide facilities to house the jail and to fund its operation).  Conspicuously absent from Plaintiff's brief is a citation to any legal authority to the contrary or otherwise in support of his argument.  The claims against the County Commission are thus due to be dismissed.

### C.      The Merits of the Due Process Claims

Defendants also contend that they are entitled to prevail as a matter of law because Plaintiff's due process claims fail on the merits.  The Due Process Clause of the Fourteenth Amendment provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. Const., Amend. XIV, § 1.  This provision affords two different kinds of constitutional due process protection: "procedural" and "substantive."  *See McKinney v. Pate*, 20 F.3d 1550,

1555 (11th Cir. 1994) (en banc).  "The substantive component of the Due Process

Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit

in the concept of ordered liberty.'"  *McKinney*, 20 F.3d at 1556 (quoting *Palko v.

Connecticut*, 302 U.S. 319, 325 (1937)) (footnote omitted).  "A finding that a right

merits substantive due process protection means that the right is protected against

certain government actions regardless of the fairness of the procedures used to

implement them."  *Id.* (internal quotation marks and citations omitted).  A

"procedural" due process claim, by contrast, is founded on the proposition that a

State is constitutionally obligated to "provide fair procedures and an impartial

decisionmaker before infringing on a person's interest in life, liberty, or property."

*Id.* at 1561; *see also Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990) ("Procedural

due process rules are meant to protect persons not from the deprivation, but from

the mistaken or unjustified deprivation of life, liberty, or property" (quoting *Carey

v. Piphus*, 435 U.S. 247, 259 (1978)).  A violation of either procedural or

substantive due process may form the basis for a suit under § 1983, *id.* at 1555, and

Plaintiff has pled both types of claims.  (Compl. ¶¶ 24, 25).  Defendants, however,

argue that all of them are subject to dismissal on the merits, as a matter of law.  As

explained below, the court agrees with Defendants.

## 1.    Substantive Due Process

The court first considers Plaintiff's substantive due process claim.  (*See* Compl. ¶¶ 13-15, 24-26).  It is not disputed that Plaintiff was subject to a county civil service system created by Alabama law such that he had a constitutionally protected property interest in his continued employment.  *See generally Epps v. Watson*, 492 F.3d 1240, 1246-47 (11th Cir. 2007); *Heard v. Hannah*, 51 F. Supp. 3d at 1138-39; *Fowler v. Johnson*, 961 So. 2d 122, 131-32 (Ala. 2006).  Despite that, the *en banc* Eleventh Circuit recognized in *McKinney* that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'"  20 F.3d at 1556 (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J. concurring)).  Therefore, even if a public employee possesses a constitutionally protected interest in his employment, such arises solely from State-created rights rather than from the Constitution, so his discharge might implicate only "procedural" due process protections, not those of "substantive" due process.  *McKinney*, 20 F.3d at 1559-61; *see also Silva v. Bieluch*, 351 F.3d 1045, 1047 (11th Cir. 2003); *Bussinger v. City of New Smyrna Beach, Fla.*, 50 F.3d 922, 925 (11th Cir. 1995); *Narey v. Dean*, 32 F.3d 1521, 1526-28 (11th Cir. 1994); *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 599

24

(2008) ("[T]he Due Process Clause does not protect a public employee from discharge, even when such discharge was mistaken or unreasonable." (citing *Bishop v. Wood*, 426 U.S. 341, 350 (1976)).  As such, Plaintiff's § 1983 claim alleging a violation of substantive due process plainly fails under *McKinney* and its progeny.

### 2.    Procedural Due Process

By contrast, *McKinney* does authorize § 1983 claims for procedural due process violations brought by discharged public employees who possessed a protected property interest in their continued employment.  *See* 20 F.3d at 1561-62. In that context, the Due Process Clause generally requires that a public employee receive a pre-termination notice of the charges and evidence against him and an opportunity to present his side of the story.  *McKinney*, 20 F.3d at 1561 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).  However, that hearing may be informal and need not be before an impartial decisionmaker.  *See id.* at 1561-62; *Loudermill*, 470 U.S. at 542, 545-46.  But where such abbreviated pre-termination proceedings are used, an employee has a procedural due process right following his termination to a full evidentiary hearing before an impartial decisionmaker.  *See Loudermill*, 470 U.S. at  546-47; *Hatcher v. Board of Pub. Educ. & Orphanage for Bibb Cty.*, 809 F.2d 1546, 1554 (11th Cir. 1987); *Kelly v.*

*Smith*, 764 F.2d 1412, 1415 (11th Cir. 1985), *overruled on other grounds by McKinney*, *supra*; *Reeves v. Thigpen*, 879 F. Supp. 1153, 1174 (M.D. Ala. 1995); *cf. McKinney*, 20 F.3d at 1561 ("[I]n general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property.").

Plaintiff's procedural due process claims involve purported defects in the post-termination review of Sheriff Kilgore's decision to fire him.  For the sake of argument and disposition of the instant motion, the court assumes that Plaintiff has raised  § 1983 claims alleging that his post-termination procedures were constitutionally deficient based on the following: (1) during the hearing before the Board, its three voting members heard statements from Mrs. Kilgore, who was both the Board's Secretary and Sheriff Kilgore's wife, that were intended to influence the Board to uphold her husband's decision to fire Plaintiff, thereby compromising Plaintiff's right to a hearing before an impartial tribunal (Compl. ¶¶ 16, 27); (2) the Board refused to certify a complete hearing transcript that included Mrs. Kilgore's recess statements (*id.* ¶ 18); (3) the Board was improperly allowed an additional opportunity on remand from the Circuit Court to articulate factual findings supporting its decision (*id.*); (4) the Board's Chairman, Mike Walker, contributed $1,000 to Sheriff Kilgore's then-ongoing campaign for re-election

(Doc. 15 at 10, 88); and (5) Sheriff Kilgore appointed one of the three members of the Board.  (Doc. 15 at 10, citing *id.* at 24, ¶ 2(a)).

Defendants contend, however, that *McKinney* precludes Plaintiff's procedural due process claims as well.  In support, Defendants point to *McKinney*'s recognition that, even "when a state procedure is inadequate, no procedural due process right has been violated unless and until the state fails to remedy that inadequacy."  20 F.3d at 1560 (citing *Zinermon*, 494 U.S. at 123).  "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."  *Id.* at 1557.   As the Eleventh Circuit later explained:

> It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim.  This rule … recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora -- agencies, review boards, and state courts [--] before being subjected to a claim alleging a procedural due process violation.

*Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (citations, internal quotation marks and footnote omitted).  However, "[t]his directive is not an exhaustion requirement.  Instead, [it] is a recognition that procedural due process violations do not even exist unless no adequate state remedies are available."  *Id.* at 1331 n. 2 (internal citation omitted).  When determining whether a plaintiff has

established a valid procedural due process claim, this court looks to whether the available state procedures were adequate to correct the procedural deficiencies alleged by the plaintiff. *Id.* at 1331.

Defendants urge that "Plaintiff's allegations of certain irregularities in his post-termination appeal are insufficient as a matter of law to state a claim … because Alabama provides adequate post-termination remedies that could cure any initial deficiencies." (Doc. 5 at 8). That is, Defendants emphasize that Plaintiff had a right under state law to appeal the Board's decision to the Circuit Court, of which Plaintiff availed himself. And that court reviewed Board's decision to determine whether it applied the law correctly, whether the Board's findings were supported by substantial evidence, and whether the Board complied with due process, which is enough, Defendants say, to afford Plaintiff an adequate remedy and defeat his procedural due process claims in this court.

Plaintiff replies that although Alabama law afforded him judicial review of the Board's decision in the Circuit Court, he insists that such was not, in fact, an adequate remedy. (*See* Doc. 15 at 9-11). Plaintiff emphasizes that the Circuit Court's review was appellate in nature, not de novo, and was limited to the record on appeal. And the content of that record, he emphasizes, was determined solely by the Board he claims was biased against him and that denied his motion to supplement the record on remand from the Circuit Court. Further, he claims that

28

he had "no ability to argue new or additional facts" in the Circuit Court, which
effectively deprived him of an opportunity to litigate his due process claims in that
forum.  (*Id.* at 5).

However, Plaintiff is simply incorrect in his assertions that the Alabama
courts lack the power to remedy deficiencies or cure violations of due process in
employment termination cases like this one, where it is alleged that bias on the part
of a personnel board tainted its post-termination hearing decision.  *See Bell v. City
of Demopolis, Ala.*, 86 F.3d 191, 192-93 (11th Cir. 1996).  It is true that Alabama
courts characterize a circuit court's judicial review of administrative decisions in
employment cases as being in the nature of certiorari, limited to determining
merely whether the board applied the law correctly and whether its findings are
supported by evidence in the record.  *See, e.g.*, *Fox v. City of Huntsville*, 9 So. 3d
1229, 1232 (Ala. 2008); *Civil Serv. Bd. of Appeals for Lauderdale Cty. Sheriff's
Dep't v. Daniels*, 642 So. 2d 426, 428 (Ala. 1994).  Nevertheless, it is clear that an
aggrieved employee is permitted, at least in a collateral suit if not as part of an
appeal from the board's decision, both (1) to bring claims in an Alabama circuit
court alleging that the board was not impartial or that his termination otherwise
failed to comply with due process, and (2) to present evidence beyond the
administrative record to establish such claims.  *See City of Huntsville v. Biles*, 489
So. 2d 509, 512-13 (Ala. 1986); *Board of Dental Examiners v. King*, 364 So. 2d

29

318, 318 (Ala. 1978); *Ex parte City of Homewood*, 835 So. 2d 1038, 1040-42 (Ala. Civ. App. 2002).  Further, the Eleventh Circuit held in *Bell* that Alabama's post-deprivation remedies and standards of judicial review in this context are not materially distinguishable from the Florida state remedies sanctioned as adequate in *McKinney*.  86 F.3d at 192.  Therefore, under binding Eleventh Circuit precedent, even if Plaintiff's allegations of bias on the part of the Board members and irregularities in its proceedings are true, he cannot state a viable procedural due process claim.  *See Bell*, 86 F.3d at 192-93; *McKinney*, 20 F.3d at 1560-64; *Ellis v. City of Boaz*, 2017 WL 897597, at *5-6 (N.D. Ala. Mar. 7, 2017); *see also Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) ("The [plaintiffs] ... failed to state a valid procedural due process claim because they [did] not allege [ ] that Alabama law provided them with an inadequate post-deprivation remedy.").

### D.    Attorney's Fees

Finally, Defendants' motion to dismiss or for summary judgment also includes a demand for attorney's fees under 42 U.S.C. § 1988.  (Doc. 4 at 2; Doc. 5 at 13-14).  Under the "American Rule," each party is generally required to bear his own litigation expenses, including attorney's fees, regardless of whether he wins or loses.  *Fox v. Vice*, 563 U.S. 826, 832 (2011); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975); *Heard*, 51 F. Supp. 3d at 1145-47.  However, Congress has authorized the award of "a reasonable attorney's fee" to

"the prevailing party" in various kinds of civil rights cases, including suits brought under § 1983.  42 U.S.C. § 1988(b).  The Supreme Court has recognized that when the plaintiff in such an action is the prevailing party, he "should ordinarily recover an attorney's fee" from the defendant—the party whose misconduct created the need for legal action.  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978) (internal quotation marks omitted).  Section 1988(b) also authorizes a fee award to a prevailing defendant, but only upon a finding by the court that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *Id.*, 434 U.S. at 421; *see also Fox*, 563 U.S. at 833; *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980).  "Factors that are important in determining whether a claim is frivolous include (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits."  *Quintana v. Jenne*, 414 F.3d 1306, 1309 (11th Cir. 2005) (quotation omitted).  However, courts must be cautious not to judge in hindsight whether a claim was frivolous when it was filed.  *See Christiansburg Garment Co.*, 434 U.S. at 421-22; *Sullivan v. School Bd. of Pinellas Cty.*, 773 F.2d 1182, 1188-89 (11th Cir. 1985). Within these constraints, the decision whether to award attorney's fees to a prevailing party under § 1988 is discretionary with the court.  *Heard*, 51 F. Supp. 3d at 1146.

Defendants candidly recognize that, even if Plaintiff's due process claims are due to be rejected, they "do not appear, at least from the face of the pleadings, to meet [the] very high standard" under which a defendant might be awarded attorney's fees under § 1988(b). (Doc. 5 at 13-14). Despite that, Defendants urge that the court still should award such fees because "the rather unusual fact that Plaintiff has brought this suit improperly seeking a second bite at the apple after receiving a ruling from the Circuit Court specifically stating that … his due process rights … were [not] violated … militates in favor of a finding that [this action] is frivolous, unreasonable, and without foundation." (*Id.* at 14). For the reasons explained below, the court disagrees.

Boiled down, Defendants' argument is that Plaintiff's § 1983 claims in this action alleging that his termination violated due process were frivolous or otherwise unreasonable from the outset on the theory that they were so unmistakably barred by res judicata, collateral estoppel, or both, in light of the Circuit Court's judgment that had already rejected Plaintiff's assertion that his termination violated due process. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action

32

involving a party to the first case." *San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 336 n. 16 (2005) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Jaffree v. Wallace*, 837 F.2d 1461, 1463 n. 1 (11th Cir. 1988). In § 1983 actions, this court is bound to give res judicata and collateral estoppel effect to a prior state-court judgment to the same extent required under state law. 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90 (1980); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984); *Laskar v. Peterson*, 771 F.3d 1291, 1299-1300 (11th Cir. 2014).

However, even assuming *arguendo* that Defendants might ultimately be correct that res judicata or collateral estoppel do, in fact, preclude Plaintiff's § 1983 claims, there are at least non-frivolous grounds for arguing that they do not. First, under Alabama law, res judicata and collateral estoppel require substantial identity of parties in both cases. *See Stewart v. Brinley*, 902 So. 2d 1, 9 (Ala. 2004). While the Circuit Court ruled that Plaintiff's due process rights were not violated, that court's order also unambiguously states that both the Board and the County Commission were dismissed on the purely procedural ground that they were not proper parties to Plaintiff's appeal of the Board's decision. Accordingly, one might argue, as Plaintiff indeed does (*see* Doc. 15 at 7), that the Circuit Court ruled on the merits of Plaintiff's due process cause of action only as it related to his claims against Sheriff Kilgore, not as to those against the Board or the County

33

Commission.  And while acknowledging that the Circuit Court dismissed them on procedural grounds, the Board and the County Commission do not address why they are nonetheless entitled to claim res judicata or collateral estoppel protection in this court.

Also, Alabama courts recognize that res judicata and collateral estoppel do not apply where the party against whom they are asserted was not given a "full and fair opportunity" to litigate the claim or issue in question.  *See Smith v. Cahill*, 72 So. 3d 692, 697 (Ala. Civ. App. 2011); *Green v. Daughtrey*, 926 So. 2d 341, 346 (Ala. Civ. App. 2005); *see also Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 480-81 (1982).  There is at least a non-frivolous argument that such principle applies here on the basis that Plaintiff was prevented from fully litigating his due process claims in the Circuit Court.  In particular, although the Circuit Court rejected Plaintiff's due process claim, there is reason to believe the court did so without considering any of Plaintiff's evidence offered in support.  That is, Plaintiff sought to supplement the record on appeal, both before the Circuit Court and before the Board on remand, apparently for the purpose of having it include (1) the recording and transcript of the hearing recess at which Mrs. Kilgore allegedly made improper statements to the voting Board members and (2) documents showing that the Board's chairman had contributed $1,000 to Sheriff Kilgore's re-election campaign.  (*See* Doc. 15 at 69-88).  However, both the Circuit Court and the Board

on remand declined Plaintiff's requests to supplement the record. (Doc. 5-2 at 14; Doc. 5-3 at 2). Nonetheless, on return to remand, the Circuit Court proceeded to summarily deny Plaintiff's due process claim, apparently based only on the administrative record as approved by the Board. (Doc. 5-3 at 8).

Finally, res judicata and collateral estoppel also require that the prior judgment was rendered by a court of competent jurisdiction. *Stroeker v. Harold*, 111 So. 3d 138, 147-48 (Ala. Civ. App. 2012) (citing *Lloyd Noland Found., Inc. v. HealthSouth Corp.*, 979 So. 2d 784, 793 (Ala. 2007)); *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 636 (Ala. 1998); *see also Ex parte Howard*, 710 So. 2d 460, 464 (Ala. 1997). And although the Circuit Court ruled upon Plaintiff's due process claim, it is arguable that it lacked jurisdiction to do so. To be sure, there are Alabama state appellate decisions reviewing judgments in which a circuit court had addressed whether the procedures employed in terminating a public employee comported with due process standards. *See, e.g., Guinn v. City of Eufala*, 437 So. 2d 516 (Ala. 1983); *Ex parte Conecuh Cty. Bd. of Educ.*, 495 So. 2d 1108, 1109 (Ala. 1986); *Biles*, 489 So. 2d at 512-14; *Guthrie v. Civil Serv. Bd. of City of Jasper*, 342 So. 2d 372, 373 (Ala. Civ. App. 1977). However, administrative boards in Alabama typically lack authority to resolve constitutional claims. *See Ex parte Boyette*, 728 So. 2d 644, 645 (Ala. 1998) ("[A]dministrative agencies ordinarily have limited authority to decide allegations of constitutional and

statutory violations"); *Ex parte Averyt*, 487 So. 2d 912, 913-14 (Ala. 1986); *City of Homewood v. Caffee*, 400 So. 2d 375, 378 (Ala. 1981); *Wright v. City of Mobile*, 170 So. 3d 656, 661 (Ala. Civ. App. 2014).   And where a board cannot hear such claims, and the relevant legislation provides for judicial review limited to the administrative record and to the issues before the board, a line of Alabama decisions holds that the reviewing circuit court likewise lacks jurisdiction to resolve hear and determine constitutional claims on an appeal from the board's decision.  *See Ex parte Averyt*, 487 So. 2d at 912-13; *Caffee*, 400 So. 2d at 378; *Wright*, 170 So. 3d at 661-62; *City of Mobile v. Robertson*, 863 So. 2d 117, 120 (Ala. Civ. App. 2003); *Ex parte City of Homewood*, 835 So. 2d at 1040-42; *Turner v. Mobile Cty. Personnel Bd.*, 689 So. 2d 168, 170 (Ala. Civ. App. 1997); *Joyner v. City of Bayou La Batre*, 572 So. 2d 492, 493 (Ala. Civ. App. 1990); *compare Ex parte Boyette*, 728 So. 2d at 645, 648-49 (contrasting a circuit court's limited review of local administrative board actions under state laws generally and the broader review afforded under the Alabama Administrative Procedure Act ("AAPA"), which authorizes a court to reverse or modify an action of a State administrative agency if "in violation of constitutional or statutory provisions," Ala. Code § 41-22-20(k)(1)); *but see King*, 364 So. 2d at 318 (holding, before the adoption of the AAPA, that a circuit court had the authority to assess whether state board proceedings complied with due process and to consider evidence beyond the

administrative record in doing so); *cf. Biles*, 489 So. 2d at 512-14 (holding that circuit court properly considered evidence beyond the administrative record to decide § 1983 "count" alleging that city personnel board was biased in violation of due process, although it is unclear from the opinion whether the action was styled as an appeal of the board's decision or an independent, collateral suit).  Rather, those authorities indicate that in such case, the only avenue by which a party may raise constitutional claims, or other claims beyond the purview of the board, is a "separate and distinct collateral suit" that invokes the general jurisdiction of the circuit court, thereby allowing it to consider additional evidence beyond the administrative record.  *Wright*, 170 So. 3d at 661; *see also Ex parte Averyt*, 487 So. 2d at 913-14; *Ex parte Boyette*, 728 So. 2d at 649; *Caffee*, 400 So. 2d at 378.

Here, the court's review of Alabama Acts 88-438 does not reveal any clear provisions authorizing the Board to hear and determine constitutional claims. Further, the state law granting a right to judicial review of a decision by the Board states in relevant part as follows:

> Either the sheriff or the members of the classified service subject to such disciplinary action may appeal the order of the Board to the Talladega County Circuit Court within thirty days from date of such order.  Review by the court shall be without a jury and shall be confined to the record, and to a determination of questions of law presented.  Upon such appeal, the Board's finding of facts shall be final and conclusive.

Ala. Acts. 88-438, § 10(b).  Alabama courts have held that similar provisions did not allow a circuit court to determine constitutional claims in an action styled as an appeal from a local personnel board's ruling.  *See Wright*, 170 So. 3d at 661-62; *Turner*, 689 So. 2d at 170; *Robertson*, 863 So. 2d at 120; *Ex parte City of Homewood*, 835 So. 2d at 1041-42.  And here, Plaintiff's pleading in the Circuit Court was expressly styled as an "appeal" pursuant to Ala. Acts 88-438, not as a separate and independent action invoking the court's general jurisdiction.  (Doc. 5-1).  As such, the circumstances support non-frivolous arguments that collateral estoppel and res judicata do not preclude Plaintiff's § 1983 due process claims.  Accordingly, Defendants' request for attorney's fees under § 1988(b) is due to be denied.

## IV.    CONCLUSION

Based on the foregoing, Defendants' alternative motion for summary judgment on all claims (Doc. 4) is due to be **GRANTED**.  However, Defendants' request for attorney's fees under 42 U.S.C. § 1988(b) is due to be **DENIED**.  A separate final order will be entered.

**DATED** this 21th day of March, 2017.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge

38